


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

HARRY POLLAK,

Plaintiff,

vs.

SUSAN WILSON, et al.,

Defendant.

Case No. 22-CV-49-ABJ

**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL [47]**

Before the Court is Defendants' Motion to Compel. (ECF No. 47). The Court held an informal discovery conference on May 10, 2023, wherein the parties argued their positions and the Court gave permission to Defendants to file the present Motion. After reviewing the briefing, and being fully advised, the Court finds that Defendants' Motion should be granted.

## BACKGROUND

This case arises from events that took place at Sheridan County School District No. 2 board meetings that were open to the public. (ECF No. 43, at 5). At those meetings, the public is allowed to participate and vocalize their concerns—with some restrictions. *Id.* Participating members of the public may speak on items that relate directly to the school district and make objective comments on school operations and programs once recognized by the chairperson of the board. *Id.* at 6. However, policy prohibits commentary discussing

personnel matters as well as gossip, defamatory remarks, and abusive or vulgar language. *Id.*

On February 7, 2022, Plaintiff Henry Pollak intended to speak at one of the board meetings. *Id.* at 7. When his turn began, Defendant Susan Wilson cut him off for mentioning Superintendent Stults citing the board policy. *Id.* at 8. After argument between the two, Plaintiff was not allowed to finish his commentary and was escorted out of the meeting by the police. *Id.* at 10. Plaintiff alleges the Defendants' actions violated his First Amendment Rights.

Now Defendants seek discovery of certain communications of Plaintiff regarding a private Facebook group called Free our Faces. Plaintiff opposed the disclosure of that information claiming it is privileged under the First Amendment.

**RELEVANT LAW**

Rule 37 of the Federal Rules of Civil Procedure provides an enforcement mechanism for Rule 34. *Simon v. Taylor*, No. CIV 12-0096 JB/WPL, 2014 WL 663917, at *13 (D.N.M. Nov. 18, 2014). Rule 37 states "[a] party seeking discovery may move for an order compelling an … inspection" if a party fails to comply with a proper request for inspection under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). To use this mechanism, the moving party must first give notice to all parties and affected persons and "has in good faith conferred or attempted to confer with the person or party failing to make the disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). "It is within the sound discretion of the court to grant or deny a motion to compel under Rule

37." *Breen v. Black*, No. 15-CV-168-NDF, 2016 WL 4257438, at *5 (D. Wyo. July 22, 2016).

**RULING OF THE COURT**

Beginning with *NAACP v. Alabama*, courts have recognized the First Amendment can provide a privilege to disclosing certain materials during discovery. 357 U.S. 449, 462. That holding was rooted in a finding that the production of certain information may chill a person's right to freedom of association. *See id.* ("We think that the production order, in the respects here drawn in question, must be regarded as entailing the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association."). Subsequent cases have expanded on the doctrine and the Tenth Circuit has "expressly held that the First Amendment privilege applies to discovery orders issued in litigation involving only private parties."[1] *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470, 481 (10th Cir. 2011). Additionally, while *NAACP v. Alabama* focused on membership lists, other cases have upheld the privilege in varying contexts. *Id.* at 480.

[1] The Court will note that a majority of the caselaw analyzing the First Amendment Associational Privilege deals with disclosure regimes compelled under statute. In fact, that is the very context the privilege was created by the U.S. Supreme Court in *NAACP v. Alabama*. Nevertheless, the privilege has been extended to cases involving only private litigants and general discovery. The extension has muddied the water, so to speak, of the applicable law and if an analysis under a disclosure regime context differs any from discovery with private litigants. In the disclosure regime context, it appears to be more of a First Amendment right preventing the disclosure, while in the private discovery context the analysis more aligns with a privilege. *Compare Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (applying exacting scrutiny to a California state law disclosure requirement) *with Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir. 1987) (enunciating the four-factor test established in *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977) that a court is required to analyzed when determining if the First Amendment protects information from discovery).

Like any other privilege, the objecting party asserting a First Amendment privilege bears the initial burden of proving the privilege applies. *Minter v. City of Aurora*, No. 20-cv-2172-RMR-NYW, 2021 U.S. Dist. LEXIS 212819, at *14 (D. Colo. Sept. 29, 2021); *Wyoming v. USDA*, 239 F. Supp. 2d 1219, 1236–37 (D. Wyo. 2002), *vacated as moot* by 414 F.3d 1207, 1213 n.7 (10th Cir. 2005)). Once the objecting party has shown the privilege applies, a court must apply a balancing test to protect the potential First Amendment interests of the disclosing party. *Id.*; *Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir. 1987). The balancing test requires the consideration of four factors: "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Grandbouche*, 825 F.2d at 1466.

Plaintiff fails at the first step to show the First Amendment Associational Privilege applies. "For the privilege to apply, [Plaintiff] must demonstrate an objectively reasonable probability that disclosure 'will chill associational rights, i.e. that disclosure will deter membership due to fears of threats, harassment or reprisal from either government officials or private parties which may affect members' physical well-being, political activities or economic interests.'" *NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, No. 2:17-MC-38-GCS, 2017 U.S. Dist. LEXIS 129354, at *12–13 (S.D. Ohio Aug. 15, 2017) (quoting *NAACP*, 357 U.S. at 462–63). "The type of threats, harassment, and reprisal discussed by the Supreme Court in *NAACP* are threats of physical coercion or bodily harm, economic harm or reprisal, loss of employment, and other public manifestations of hostility." *Point Ruston, LLC v. Pac. Northwest Reg'l Council of the United Bhd. Of*

*Carpenters & Joiners of Am.*, No. C09-5232BHS, 2009 U.S. Dist. LEXIS 122956, at *8 (W.D. Wash. Dec. 18, 2009).

**I. Waiver and Inapplicability**

The circumstances at bar require a more pragmatic approach to the claimed privilege. The Tenth Circuit has "refuse[d] to adopt a per se rule that a plaintiff waives his First Amendment privileges simply by bringing suit." *Grandbouche*, 825 F.2d at 1467. Citing to a California Supreme Court opinion, the court was persuaded that plaintiffs must "not be unduly deterred from instituting lawsuits by the fear of exposure of their private associational affiliations and activities." *Id.* (quoting *Britt v. Superior Court*, 574 P.2d 766, 775 (Cal. 1978)). Any waiver should be narrowly construed. *Id.* Instead, the fact that a plaintiff has placed certain information at issue should be considered under the balancing test. *Id.*

While there is no per se rule that a plaintiff waives the First Amendment Associational Privilege when filing suit, *Grandbouche* is not completely dispositive of the issue. Instead, a plain reading of the case shows that the proper circumstances may warrant at least a limited waiver. *See id.* (stating the Tenth Circuit will not adopt a "per se" rule). However, there is no guidance on when a waiver could occur and the Tenth Circuit has indicated a preference that the fact a plaintiff puts the information at issue be considered in the balancing test. Because this Court is bound by that decision, it will not find waiver here.

Regardless of the availability of waiver, the Court is not convinced the First Amendment Associational Privilege applies to the circumstances of this case. There is no presumption that the First Amendment Associational Privilege applies. *See In re Motor*

*Fuel Temperature Sales Practices Litigation*, 641 F.3d at 488 ("we cannot say that the district court committed any error in refusing to presume that the information at issue is privileged under the First Amendment"). The Tenth Circuit has not indicated a "precise quantum of proof necessary" to claim the privilege as there is no "bright line rule." *Id.* at 491. Instead, "a party claiming a First Amendment chilling affect meets its burden by submitting, for example, affidavits which 'describe harassment and intimidation of [a group's] known members, and the resulting reluctance of people sympathetic to the goals of [the group] to associate with [it] for fear of reprisals." *Id.* (quoting *In re First Nat. Bank, Englewood, Colo.*, 701 F.2d 115, 116–17 (10th Cir. 1983)) (alterations in original). "The existence of a prima facie case turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010). At the core of a finding of applicability is that freedom of association will be chilled by the information's disclosure. *Id.*; *Wyoming*, 239 F. Supp. 2d at 1238. Put simply, there must be a showing active members will leave, or prospective members will not join because of reasonable probability of threats, harassment, or reprisal. *Id.*; *Wyoming*, 239 F. Supp. 2d at 1238.

Defendants have offered many concessions to the actual information sought that makes any First Amendment concern much more attenuated. First, Defendants are only seeking Plaintiff's own personal communications, not all communications of the group. (ECF No. 47, at 3–5, 7–8). Second, Defendants have offered to stipulate to a reasonable protective order. *Id.* at 6. Constraining the information to the parties of this case may not completely alleviate First Amendment concerns on its own, but it does move the bar away

from infringement. *Perry*, 591 F.3d at 1165 (stating "harms can be mitigated in part by entry of a protective order" but still finding a chilling effect). Most importantly, Defendants offered to accept the documents with the names of third parties redacted. (ECF No. 47, at 6). Considering this concession, it is only Plaintiff's statements that will come to light, under a protective order, nullifying the association issues tethered to the other members of Free our Faces. While Defendants have not relinquished their right to seek the identities of redacted third parties at a later date as potential witnesses, those issues can be addressed if and when they arise. Last, Defendants have limited their requests to communications "pertaining to the school district and/or its board meetings during the 2021/2022 school year" and the relevant time frames of the school board meetings.[2] *Id.* at 8–9. Rather than casting a wide net, Defendants have narrowly tailored those requests.

Plaintiff does attach an affidavit to his response stating "[c]onfidentiality is an important factor affecting how [he] participate[s] in the group." (ECF No. 48-1, at 2). Additionally, that he "fear[s] threats, harassment, and reprisal from both the government and private parties if [his] internal communications with FOF members, including those who remain anonymous, are disclosed to outsiders." *Id.* He further cites to a letter from the National School Boards Association ("NSBA") to President Joe Biden which sought action from the President for criminal acts;[3] a letter from the Congressional Committee on the

---

[2] Request for Production No. 8 does appear more broad than this statement as it seeks all of Plaintiff's posts, messages, etc. relating to the Free our Faces group. Based on the statement made by Defendants that they have limited their requests to the relevant dates, this request for production will be limited to statements concerning the November 1, 2021; January 10, 2022, and February 7, 2022 meetings.

[3] Plaintiff attempts to use this letter as proof that he will be labeled as a "terrorist." However, a plain reading of the letter reveals the NSBA was seeking government intervention for criminal acts. (ECF No. 48-2).

Judiciary to Attorney General Merrick B. Garland detailing subsequent investigations by the FBI resulting from a memorandum from President Biden in response to the NSBA letter; and an article from the local Sheridan, Wyoming local media wherein the comments a person commented in part "he's a terrorist" without specific reference to a person. *Id.* at 2–3; (ECF No. 48-2); (ECF No. 48-3). Essentially, Plaintiff's argument is he will be labeled a terrorist if his communications are released. This argument is unpersuasive.

The NSBA letter cited by Plaintiff seeks action to stop and prevent criminal activity. "The First Amendment does not protect violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982). The actions described in the NSBA letter were those of "malice, violence, and threats" which would not receive First Amendment protection. (ECF No. 48-2, at 3). While after investigation "FBI agents ultimately—and rightly—determined the[] cases [investigated] did not implicate federal criminal statutes"[4] "'there is little doubt that the … purpose of investigating possible criminal violations … serves a compelling governmental interest.'" (ECF No. 48-3, at 3) (first quotation); *Perry*, 591 F.3d at 1161 (quoting *Dole v. Service Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991)) (second quotation). The evidence of investigations into potential criminal conduct should not have a chilling effect on lawful First Amendment associational rights. If Plaintiff is involved in criminal conduct, the information is clearly not protected. *Claiborne Hardware Co.*, 458 U.S. at 916. If he is not, the fear of a legitimate exercise of government authority to conduct an investigation does not warrant the application of the

[4] The Court does not have the information before it to determine the truthfulness of this statement, i.e., if any of the investigations led to criminal charges or if none led to criminal charges as stated in Plaintiff's exhibit.

privilege. In any event, Defendants' concessions will limit the information to the participants of this case and will not put the information into public scrutiny.

**II. Balancing Test**

While the Court has found that the First Amendment Associational Privilege does not apply in this context, even if it did apply Plaintiff still would be required to disclose the requested information. When analyzing the First Amendment Associational Privilege the Tenth Circuit requires a court to consider four factors: "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information." *Grandbouche*, 825 F.2d at 1466. "If a party asserting the First Amendment Associational Privilege makes a prima facie showing of entitlement to the privilege, the burden shifts to the party seeking disclosure to demonstrate a compelling need for the requested information." *Wyoming*, 239 F. Supp 2d at 1241. Defendants therefore have the burden of establishing a compelling need for the information.

**A. Relevance**

"When a claim of Associational Privilege is asserted, the relevance standard is more exacting than the minimal showing of relevance under Rule 26(b)(1)." *Wyoming*, 239 F. Supp. 2d at 1241 (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977). Under this standard, the information sought must go to the heart of the matter. *Id.* The Defendants are seeking information about Plaintiff's role and his communications relating to certain school board meetings. (ECF No. 47, at 3–5).

As admitted by Plaintiff in his Amended Complaint, the school board meetings qualify as a limited public forum. (ECF No. 43, at 11). "A limited public forum arises where 'the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum.'" *Summum v. City of Ogden*, 297 F.3d 995, 1002 n.4 (10th Cir. 2002) (quoting *Summum v. Callaghan*, 130 F.3d 906, 916 (10th Cir. 1997)). Restrictions to speech in limited public forums are permissible so long as they are reasonable and viewpoint neutral. *Christian Legal Soc. Chapter of the University of California, Hastings College of Law v. Martinez*, 561 U.S. 661, 679 (2010).

In accordance with the law on limited public forums, the school district has enacted certain restrictions on the topics that can be discussed at school board meetings. When Plaintiff attempted to speak at a school board meeting, Defendant Wilson used the enacted rules as the basis for denying Plaintiff an opportunity to speak. This denial is at the heart of the case as it is the basis for Plaintiff initiating the instant lawsuit. While Plaintiff asserts he was not going to violate these rules with what he was proposing to state during the public comment period, his prior communications within the Free Our Faces group are perhaps the best evidence of what he was truly intending to state. Accordingly, the information goes to the heart of the case and is necessary for trial Defendants to offer evidence of impeachment or for other purposes.

**B. Necessity**

"The necessity of the information is correlated to its relevance; that is, the more relevant the information, the greater the need for disclosure." *Wyoming*, 239 F. Supp. 2d at

1242. As explained above, the information sought is highly relevant and necessary for Defendants to present impeachment evidence at trial. The prior communications provide the best evidence of what Plaintiff would have said at the school board meeting. Without the disclosure of the information, Plaintiff could provide a one-sided narrative without the ability to compare it to his prior statements. While the two may be perfectly in sync, Defendants deserve the opportunity to look for inconsistencies and use the information to frame their deposition of Plaintiff.

**C. Availability From Other Sources**

The information here would also not be available from other sources. Any attempt to obtain Plaintiff's posts or communications from the organization itself or another member would likely be met with the same claim of privilege. It would make little sense to delay a decision because another member might be willing to disclose the information. If that were the case, Plaintiff likely would file a motion for protective order to try and protect his own interests.

**D. Nature of the Information**

The nature of the information sought is Plaintiff's own communications relating to the school board meetings at the relevant times. The court is not aware of factually similar cases where the First Amendment Associational Privilege has been applied. Rather, it mostly arises in the context of "membership lists, volunteer lists, financial contributor lists, and past political activities of members." *Wyoming*, 239 F. Supp. 2d at 1237. Defendants are also only seeking Plaintiff's communications with third party identifiers redacted. Accordingly, all factors weigh in favor of disclosure.

## CONCLUSION

A direct appeal of a ruling on a First Amendment Associational privilege is reviewed for abuse of discretion while a petition for mandamus requires an even greater showing. *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d at 487. The Court is not convinced that the First Amendment Associational Privilege applies under these circumstances, and even if it did all factors weigh in favor of disclosure. While the Court appreciates Plaintiff's concerns, the fact that Plaintiff is the party that put the facts at issue also weights in favor of disclosure. *Grandbouche*, 825 F.2d at 1467. Under the circumstances here, all factors weigh in favor of disclosure.

NOW, THEREFORE, IT IS ORDERED Defendants Motion to Compel [47] is GRANTED.

IT IS FURTHER ORDERED Plaintiff shall produce the requested documents within 30 days from the issuance of this Order.

Dated this 25th day of July, 2023.

Kelly H. Rankin
United States Magistrate Judge