Brett R. Nolan (*pro hac vice*)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., N.W., Suite 801
Washington, DC 20036
(202) 301-3300 | bnolan@ifs.org
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| HARRY POLLAK, <br><br>    Plaintiff, <br><br> vs. <br><br> SUSAN WILSON, in her individual capacity, *et al.*, <br><br>    Defendants. | Case No. 2:22-CV-49-ABJ |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

-i-

TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i
Table of Authorities ............................................................................................................... ii
Reply to Defendants' Factual Claims .................................................................................... 1
Response to Statement of Additional Facts ........................................................................... 2
Argument ............................................................................................................................... 2
    I.   The Personnel Rule is unconstitutional as applied to speakers who mention public officials while speaking about school policy. ......................................... 2
        A.  The Personnel Rule unreasonably prohibits mentioning school officials. ...... 3
        B.  The Personnel Rule unreasonably vests absolute discretion in the chair. ...... 6
        C.  The Personnel Rule discriminates based on viewpoint. ................................ 7
        D.  SCSD2 unconstitutionally applied the rule against Pollak. ............................ 8
    II.  The Offensive Speech Rule is unconstitutional. ................................................. 9
Conclusion ........................................................................................................................... 10

-ii-

TABLE OF AUTHORITIES

**Cases**

*Iancu v. Brunetti*,
   139 S. Ct. 2294 (2019) .................................................................................................. 10

*Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*,
   3 F.4th 887 (6th Cir. 2021) ............................................................................................ 10

*Lamb's Chapel v. Ctr. for Moriches Union Free Sch. Dist.*,
   508 U.S. 384 (1993) ........................................................................................................ 7

*Matal v. Tam*,
   582 U.S. 218 (2017) ...................................................................................................... 10

*Minn. Voters All. v. Mansky*,
   138 S. Ct. 1876 (2018) ................................................................................................ 3, 6

*Peck v. McCann*,
   43 F.4th 1116 (10th Cir. 2022) ....................................................................................... 9

SCSD2 does not defend the unreasonably broad rule that it used to silence Pollak's speech. Instead, SCSD2 argues that its speech restriction is not as broad as its own witnesses admit. None of the material facts are disputed, and the Court should grant summary judgment for Pollak.

## REPLY TO DEFENDANTS' FACTUAL CLAIMS

Pollak agrees that none of the material facts are disputed and replies to the alleged "misstatements" and "inaccuracies" SCSD2 identifies:

Statements 2 & 3: SCSD2 disputes factual claims that Pollak never makes in these paragraphs, and so SCSD2's additional context is unresponsive.

Statement 9 & 10: SCSD2 argues that Pollak "misstates and/or incorrectly summarizes deposition testimony," but SCSD2 does not identify any specific error. The other testimony SCSD2 quotes is consistent with Pollak's factual claims.

Statement 11: SCSD2 claims that "Pollak's statement suggests that SCSD2 has not stopped other speakers from discussing personnel during public comment." (ECF No. 68 at 4). Not so. Pollak stated that Wilson never stopped a speaker from making *positive* comments about SCSD2 staff. None of the evidence SCSD2 cites contradicts this claim. That Wilson and SCSD2 testified that other speakers have been stopped is consistent with Wilson's testimony that she "never allowed anyone to speak critical about" school staff. (ECF No. 66 at 7 (¶21)).

Statement 15: SCSD2 disputes Pollak's claim that speakers could not talk about the issues the superintendent publicly addressed during the January 2022 public-comment period because the superintendent spoke *after* the time for audience comments. To dispute this claim, SCSD2 relies on the fact that Pollak and others

-1-

spoke during the January meeting. But because time travel is impossible, anyone who wanted to address the issues that the superintendent spoke about had to wait until the next meeting because the public-comment period had ended.

Statement 21: SCSD2 argues that Pollak "misstates and/or incorrectly summarizes deposition testimony," but it does not identify a specific error. Pollak agrees Wilson testified she stopped him "because he was violating the personnel matter rule." This is consistent with the claim she enforced the rule in part because "he was very critical in his speech." (Ex. 14, ECF No. 66-14 at 43:25–44:12).

Statements 22 & 23: SCSD2 argues that statements about why Pollak has chosen not to speak at future meetings are not "statements of fact," but rather "Pollak's personal opinion and/or personal views." (ECF No. 68 at 5). That is wrong. These are factual statements about Pollak's future desire to engage in speech, supported by uncontroverted testimony from his deposition.

RESPONSE TO STATEMENT OF ADDITIONAL FACTS

SCSD2 incorporates its statement of facts from its motion for summary judgment. (ECF No. 68 at 5). Pollak likewise incorporates and relies on his response to that statement of facts here. (ECF No. 67 at 1–3).

ARGUMENT

I.   THE PERSONNEL RULE IS UNCONSTITUTIONAL AS APPLIED TO SPEAKERS WHO MENTION PUBLIC OFFICIALS WHILE SPEAKING ABOUT SCHOOL POLICY.

The heart of this case turns on the fact that Defendant Wilson enforced the Personnel Rule against Pollak merely because he mentioned the superintendent while responding to public comments about the district's pandemic policy. That

speech restriction so obviously violates the First Amendment that SCSD2 now abandons it entirely. SCSD2 does not spend a single word defending the unreasonable breadth of the Personnel Rule and how Wilson enforced it against Pollak. Instead, SCSD2 buries its head in the sand and declares—without citing any legal authority or evidence—that Pollak was not "stopped from speaking because he mentioned a public official while discussing school policy." (ECF No. 68 at 7). SCSD2 cannot defend its policy and so it chooses to deny the policy exists.

    A. *The Personnel Rule unreasonably prohibits mentioning school officials.*

    1. Start with SCSD2's claim that the Personnel Rule does not prohibit speakers from mentioning school officials while discussing policy. Everyone agrees the Policy does not define "personnel matters," and SCSD2 has refused to define it. It cites no dictionary or other legal authority to explain the rule's scope. It cites no testimony from an SCSD2 representative explaining how it interprets the phrase. SCSD2 says nothing at all about what the Personnel Rule actually means.

But SCSD2's silence in its briefs does not mean it has been silent on this issue entirely. Rather, SCSD2 has consistently claimed that mentioning school officials by name violates the Personnel Rule no matter the context. During SCSD2's deposition,[1] the Board's representative testified that "during audience comments, it is not appropriate for the audience to speak *about personnel.*" (Ex. 2, ECF No. 66-2

---

[1] The superintendent testified on behalf of the Board of Trustees about "[t]he terms, meaning, scope and purpose of the" Policy. (Ex. 21, ECF No. 66-21 (Attachment A)). "The Court considers a [government's] authoritative constructions in interpretating a state law." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1881 (2018).

-3-

at 32:2–4 (emphasis added)). He did not say "it is not appropriate to speak about allegations against personnel." He did not say "it is not appropriate to speak about the job performance of personnel." He did not say "it is not appropriate to speak about accusations that personnel violated someone's constitutional rights." He said that the rule prohibits speaking "about personnel"—plain and simple. And when asked whether "discussing employees of the school district *for any reason* violates the guidelines for public comment," SCSD2's representative explained that "the Board Chair has the prerogative to make that decision." (*Id.* at 52:4–10 (emphasis added)). So the Personnel Rule does, in fact, prohibit mentioning employees "for any reason," and it's up to the chair to decide whether to enforce it.

2. Nor is there merit to SCSD2's claim that Pollak was not "stopped from speaking because he mentioned a public official while discussing school policy." (ECF No. 68 at 7). SCSD2 again cites no authority for this claim. For good reason. Defendant Wilson has repeatedly stated that she enforced the Personnel Rule against Pollak because he mentioned the name of the superintendent—full stop.

The Court need only watch the short, six-minute video of Wilson censoring Pollak to see how untethered from the facts SCSD2's argument really is. Over the course of several minutes, Pollak (and other individuals) repeatedly explained to Wilson that he was not talking about a personnel issue but was instead simply responding to the superintendent's comments from an earlier board meeting. Four separate times Wilson stated that the context did not matter because the rules prohibit mentioning the superintendent for any reason.

*First*, Pollak explained that he was not addressing a personnel issue but that he mentioned the superintendent because "Mr. Stults addressed these items last month, I'm addressing them this month." (Ex. 16, ECF No. 66-16 at 0:42–48). Wilson responded: "I'm going to have to ask you to leave because we do not discuss personnel during board meetings in open session." (*Id.* at 0:47–53). *Second*, Pollak again explained that "[Stults] sat back here, made a comment, I'm rebutting his comment." (*Id.* at 0:53–59). Wilson was not moved by the context: "You are speaking about Mr. Stults. *That's all that's to be said.*" (*Id.* at 1:39–1:44 (emphasis added)).

*Third*, several minutes into the exchange a bystander interrupted to explain that she understood Pollak as simply wanting to "state [his] opinion . . . in regards to something that was said [at the January meeting]." (*Id.* at 3:18–40). Wilson again made clear that the Personnel Rule prohibited anyone from mentioning SCSD2 staff for any reason: "That's okay. We do not speak of personnel. You mentioned Mr. Stults by name. He is our superintendent. He is personnel." (*Id.* at 3:40–489). And *fourth*, another individual interrupted believing that Wilson did not understand what Pollak was saying because Pollak was not trying to talk about a personnel issue. Wilson again rejected any notion that context mattered:

| | |
|---|---|
| Individual: | There's miscommunication going on here, though, is the problem. Like he's not addressing Stults. He's addressing his statements – |
| Wilson: | He is mentioning Mr. Stults. We're done. |

(*Id.* at 4:01–14; *see also* Ex. P, ECF No. 64-16 at 1:17–28).

Nor did Wilson back away from that position during her deposition. She agreed that it violated the Personnel Rule if a speaker "spoke the name of a paid

-5-

employee." (Ex. 14, ECF No. 66-14 at 35:8–11; *see also id.* at 34:2–6). And when asked "specifically" how Pollak violated the rule, she stayed firm:

Q: So it's the mentioning – specifically because he mentioned Mr. Stults's name that violated the rule?

A: Yes.

(*Id.* at 44:19–22). There is nothing "faulty" about Pollak's claim that the Personnel Rule prohibits him from talking about the superintendent while discussing school policy. (ECF No. 68 at 8–9).

One last point. SCSD2 never reckons with the bizarre result of its rule. When the superintendent stood up at the January 2022 meeting to publicly defend the legality of the district's pandemic policies, that was not a "personnel matter" that must be discussed in executive session. But when Pollak stood up to criticize those comments, it was a "personnel matter" and off limits. There is no "sensible basis for distinguishing" those two categories of speech. *Mansky*, 138 S. Ct. 1888.

   *B. The Personnel Rule unreasonably vests absolute discretion in the chair.*

SCSD2 does not deny that it grants the chair absolute discretion to decide what the Personnel Rule prohibits and when to enforce it. (ECF No. 68 at 11–12). And as discussed above, SCSD2 refuses to give "objective, workable standards" that define the scope of the rule. *See Mansky*, 138 S. Ct. at 1891. This failure is fatal. *Id.*

SCSD2 makes two points on this issue worth responding to. First, SCSD2 argues that Pollak relies on "abstract hypotheticals" that do no matter here because Wilson "clearly believed" that Pollak's speech violated the rule. (ECF No. 68 at 11–12). But this problem is no hypothetical: When asked whether Pollak's comments violated

employee." (Ex. 14, ECF No. 66-14 at 35:8–11; *see also id.* at 34:2–6). And when asked "specifically" how Pollak violated the rule, she stayed firm:

   Q: So it's the mentioning – specifically because he mentioned Mr. Stults's name that violated the rule?

   A: Yes.

(*Id.* at 44:19–22). There is nothing "faulty" about Pollak's claim that the Personnel Rule prohibits him from talking about the superintendent while discussing school policy. (ECF No. 68 at 8–9).

One last point. SCSD2 never reckons with the bizarre result of its rule. When the superintendent stood up at the January 2022 meeting to publicly defend the legality of the district's pandemic policies, that was not a "personnel matter" that must be discussed in executive session. But when Pollak stood up to criticize those comments, it was a "personnel matter" and off limits. There is no "sensible basis for distinguishing" those two categories of speech. *Mansky*, 138 S. Ct. 1888.

   *B. The Personnel Rule unreasonably vests absolute discretion in the chair.*

SCSD2 does not deny that it grants the chair absolute discretion to decide what the Personnel Rule prohibits and when to enforce it. (ECF No. 68 at 11–12). And as discussed above, SCSD2 refuses to give "objective, workable standards" that define the scope of the rule. *See Mansky*, 138 S. Ct. at 1891. This failure is fatal. *Id.*

SCSD2 makes two points on this issue worth responding to. First, SCSD2 argues that Pollak relies on "abstract hypotheticals" that do no matter here because Wilson "clearly believed" that Pollak's speech violated the rule. (ECF No. 68 at 11–12). But this problem is no hypothetical: When asked whether Pollak's comments violated

the rule, Shane Rader said, "I don't know." (Ex. 15, ECF No. 66-15 at 37:24–38:4). So the current chair can't even answer basic questions about the objective scope of this rule. Second, SCSD2 stresses that Wilson and SCSD2's representative testified that other individuals have been censored as well. But what were those individuals saying when the Board enforced the rule? SCSD2 cannot say, (Exs. AA & AC, ECF Nos. 68-1 at 45:20–24, 68-3 at 92:7–25), so that testimony sheds no light here.

*C. The Personnel Rule discriminates based on viewpoint.*

SCSD2 argues that the Personnel Rule is viewpoint neutral because it simply removes "personnel matters" as a topic of discussion. (ECF No. 68 at 12–13). But that claim begs the question. The problem is that SCSD2's broad application of the rule encompasses not just "personnel matters" as a topic, but speech related to *any* topic in which the speaker mentions personnel.

Applying *Lamb's Chapel v. Center for Moriches Union Free School District*, 508 U.S. 384 (1993), makes the problem clear. As SCSD2 concedes, in *Lamb's Chapel* "the [Supreme] Court held that a school district could not discriminate on the basis of viewpoint by permitting school property to be used for the presentation of views about family issues and child rearing except those dealing with the subject matter from a religious standpoint." (ECF No. 68 at 13). Here, SCSD2 "[cannot] discriminate on the basis of viewpoint by permitting [the public-comment period] to be used for the presentation of views about [school policy] except those dealing with the subject matter from [the] standpoint [that school administrators responsible for those policies deserve criticism or praise]." By prohibiting speakers from mentioning the name of the superintendent, SCSD2 discriminates against discrete viewpoints.

-7-

   D. *SCSD2 unconstitutionally applied the rule against Pollak.*

SCSD2 makes three errors arguing against its discriminatory enforcement. *First*, SCSD2 again relies on testimony that Wilson enforced the Personnel Rule against others—but that's consistent with Pollak's claim that she "never" allowed anyone to speak critically about staff. The real question is whether SCSD2 can point to any evidence that Wilson stopped a speaker for complimenting an employee's job performance—that evidence doesn't exist. *Second*, SCSD2 dismisses two examples in which Wilson allowed speakers to compliment an employee's job performance by arguing that one "cannot seriously contend that a speaker saying 'thank you' during public comment constitutes discussion of a personnel matter." (ECF No. 68 at 15). That SCSD2 does not consider complimenting school staff on their job performance the same as criticizing school staff only confirms the discrimination.[2] *Third,* SCSD2 relies on the Tenth Circuit's holding that "context" supports the theory that Wilson did not censor Pollak simply for mentioning the superintendent. But the Tenth Circuit reached that conclusion based on an incomplete record that did not include the video evidence or Wilson's testimony. Wilson contradicted the Tenth Circuit's initial assumption by testifying that she enforced the rule "specifically because he mentioned Mr. Stults's name." (Ex. 14, ECF No. 66-14 at 44:19–22).

---

[2] SCSD2's reference to these complimentary statements as "incidental" is perplexing. (ECF No. 68 at 15). One speaker's entire comment centered on thanking the superintendent and the Board for its decisionmaking during the pandemic—the exact opposite viewpoint that Pollak tried to express. (Ex. 3, ECF No. 66-3 at 4).

-8-

II.   THE OFFENSIVE SPEECH RULE IS UNCONSTITUTIONAL.

1.   Pollak has standing to challenge the Offensive Speech Rule because it chills his speech. A plaintiff has standing for "a First Amendment claim" when the evidence shows "an intention to engage in a course of conduct arguably affected with a constitutional interest," a "credible threat of future prosecution," and "an ongoing injury resulting from the [law's] chilling effect on his desire to exercise his First Amendment rights." *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) (cleaned up). Pollak testified he still wants to speak at board meetings but has refrained because he worries about the Board calling the police, having him removed, having him arrested, or telling him to leave, making him "embarrassed and humiliated in front of the media and [his] peers." (Ex. 12, ECF No. 66-12 at 124:5–21). Those fears compound because the Board enforced the Policy against him based on an interpretation he does not understand, (*id.* at 95:22–24), and Pollak does not know what the Offensive Speech Rule means, (*id.* at 133:9–134:18).

SCSD2 argues Pollak lacks standing because he does not intend to engage in gossip, make defamatory remarks, or use abusive or vulgar language. (ECF No. 68 at 16). But that is beside the point. Pollak also testified that he does not believe his comments on February 7 discussed personnel matters. (Ex. 12, ECF No. 66-12 at 95:22–24; Ex. 22, ECF No. 66-22 at 3 (¶14)). For standing, the point is Pollak would like to speak at future meetings but that the Board's discriminatory enforcement of its vague policy prevents him from doing so. (Ex. 12, ECF No. 66-12 at 124:5–11).

2.   The Offensive Speech Rule discriminates based on viewpoint because it restricts speech that disparages or offends. (ECF No. 66 at 20–21). SCSD2 dismisses

the key cases on point, *Matal v. Tam*, 582 U.S. 218 (2017), and *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019), because they arose from trademark law. (ECF No. 68 at 17 n.2). But the meaning of "viewpoint discrimination" does not change from one context to another. Tellingly, SCSD2 does not cite a single case arising after *Matal* and *Brunetti* to support the rule here. Other courts have recognized that *Matal* and *Brunetti* require holding that rules prohibiting abusive and vulgar speech violate the First Amendment. *See, e.g., Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893–95 (6th Cir. 2021). This Court should do the same.

3. SCSD2's response on vagueness and overbreadth does more harm than good. SCSD2 submits that a person of ordinary intelligence can decipher what the Offensive Speech Rule means because the current chair testified that the ordinary meaning governs. (ECF No. 68 at 18). But when asked to explain what the rules cover, Rader repeatedly "[couldn't] think of a specific example" or provide clear definitions. (Ex. 15, ECF No. 66-15 at 59:2–3; *id.* at 51:18–25).

CONCLUSION

The Court should grant Pollak's motion for summary judgment.

| | |
|---|---|
| Dated: October 20, 2023. | Respectfully submitted by, |
| /s/ Brett R. Nolan | /s/ Seth Johnson (w/ permission) |
| Brett R. Nolan (*pro hac vice*) | Seth "Turtle" Johnson (WBA 7-5748) |
| INSTITUTE FOR FREE SPEECH | Adelaide P. Myers (WSB 7-6500) |
| 1150 Connecticut Avenue, N.W., Suite 801 | SLOW AND STEADY LAW OFFICE, PLLC |
| Washington, D.C. 20036 | 1116 W. Farm Ave. |
| (201) 301-3300 | P.O. Box 1309 |
| bnolan@ifs.org | Saratoga, WY 82331 |
| | (307) 399-6060 |
| *Counsel for Plaintiff* | Turtle@SlowandSteadyLaw.com |
| | Addie@SlowandSteadyLaw.com |

## CERTIFICATE OF SERVICE

I certify that the foregoing was served on all counsel of record on October 20, 2023, using the Court's CM/ECF system.

/s/ Brett R. Nolan
*Counsel for Plaintiff*
